13526

CULBRETH v. TAYLOR-COLQUITT CO.

(167 S. E., 148)

*Messrs. Osborne & Butler,* for appellant,

*Messrs. Lyles & Daniel,* for respondent, 

November 29, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries. The record discloses that the defendant was and is engaged in creosoting timber, cross-ties, etc., and for that purpose maintains and operates a large plant or yard at Sigsbee in Spartanburg County. Nearly all materials to be treated arrive by rail, and are first unloaded and stacked on the yard, near or adjacent to the railroad track, for drying and curing. The cross-ties are shipped in closed box cars, and are unloaded and stacked by laborers working in crews of three. To save space, the stacks are carried to a height above that of the box car roofs. For the purpose of curing, the ties are stacked with intervening spaces in each layer and between layers; and, to insure drainage, each layer is sloped to the outer edge by the inserting of transverse lines of ties, alternately, at each end of the stack. At the outset, the ties are "skidded" from the car, and, when the stack is built up almost to the level of the car floor, they are carried out along a gangway consisting of two parallel planks, one end resting on the car floor and the other end on the stack being built. When a tie is unloaded across the gangway, two members of the crew carry its main weight on a hand stick, and the third carries its rear end.

The plaintiff, who began work on January 20, 1930, was one of a crew made up of himself, his brother Walter, and one Roy Walker. On January 23, this crew was directed to finish unloading a car, which had been partially unloaded by another crew, one of whose members had "given out." The former crew had progressed to the point where they had

placed the gangplanks, and plaintiff's crew used the same gangway, just as they found it, to carry on the work. In this process, the plaintiff carried one end of the hand stick, one end of the plank on which he walked resting on or near the end of a tie in the stack. For some reason, after he had made several trips over the plank, and while he was crossing it in his position in the crew, it slipped from its resting place on the tie, and he was thrown upon the stack, the tie falling upon him and seriously injuring him.

The complaint alleges that the plaintiff's injuries were due to the negligence of the defendant in failing to provide him with a reasonably safe place to work and safe means with which to do the work, and in failing to make any inspection of the "set up" already prepared for the plaintiff at the place where he was sent to complete the unloading of the car, and on the safety of which he was entitled to rely. The defenses were a general denial, contributory negligence, and assumption of risk, and, in addition, that plaintiff was an independent contractor, the relationship of master and servant consequently not existing.

At appropriate stages of the trial, defendant moved for a nonsuit and for a directed verdict. These motions were overruled, and the jury found for the plaintiff $10,000. From judgment entered on the verdict, this appeal is taken.

The appellant states twenty-three exceptions, but, under our view of the case, it will not be necessary to discuss them all, as the appeal can be disposed of upon consideration of the question of whether there was any actionable negligence on the part of the defendant, proximately causing plaintiff's injuries involved in the motion for a directed verdict. What caused the slipping of the plank on which plaintiff was walking from the tie on which it rested? Appellant contends that it is one of those things that sometimes happen, the explanation of which is purely conjectural and speculative. Counsel for respondent say that "the plaintiff was injured because the gangplank was resting on a slanting tie and ice,

or melting ice was concealed under the plank and it slipped off." With regard to the matter of ice, the evidence, in sum and substance, tends to show that there was ice on the ties in the car being unloaded, but there was no testimony that ice was on the tie on which the plank rested, or that this particular tie was wet; the witnesses disclaiming knowledge as to these matters. Nor could the plaintiff and his witnesses explain the slipping of the plank. Of course, they all agreed that, if the board was resting upon melting ice on the slanting tie, this could have caused it to slip, but further than that they did not go, although they were more fully conversant with the situation than any one else. Furthermore, it was shown by the testimony that the slipping may have been due to causes other than the presence of ice, as, for instance, that the plaintiff may have stepped too much to one side of the plank and caused it to jostle or slip downward on the tie and off to the ground.

We think that the testimony shows only speculation and conjecture as to what caused the plank to slip. It is true there is a possibility that there was ice on the tie on which the plank rested, or that there was melting ice under the plank which caused it to slip, or that the tie was wet, but it is equally within the realm of possibility that the slipping was caused in some other way. Because ice was on the ties in the car, we are asked to presume that the tie on which the plank rested was icy or wet, that ice was under the plank resting upon the tie, and that its presence caused the plank to slip and fall, and this in the face of testimony showing that it could just as well have resulted from other causes.

But the respondent argues further that, aside from the matter of ice, the defendant failed to furnish him with a reasonably safe place in which to work and safe appliances with which to do the work, and that it was also negligent in sending the plaintiff to unload icy ties, by carrying them across to the stack from the car on a plank already placed,

without first making a proper inspection of the situation and seeing that the place, or the "set up," was safe for doing the work which it had ordered the crew to do. With regard to this contention, we turn again to the testimony of the plaintiff and his witnesses. As to the methods to be followed in unloading, it appears from the evidence that the crew themselves were the judges. The plaintiff testified that he and his partners depended upon their own judgment as to how they would arrange the planks in the car door and run them over to the ties, and that in that matter they did as they pleased. Walker, one of the crew with which plaintiff was working and who testified for the plaintiff, stated that the company gave instructions as to the manner in which the ties should be placed in the stack, straight up and of a certain height, but had no interest in the way the crew did the work, or the method they followed in doing it. Plaintiff's brother, who was also a member of the crew, testified that the crew had the right to select any plank they wanted or to do without a plank, and that, if the car contained not more than 170 ties, they generally "skidded" them out. He also testified that the crews were free to get the ties up on the stack out of the car by any means they saw fit to adopt, that the company had nothing to say about the method of unloading the ties, but was only concerned about the manner in which the stack was built, and that in other words, as long as the crew stacked the ties according to the company's requirements, the company had nothing to say about the way they were unloaded. From this testimony of the plaintiff and his witnesses, it is clear that the using of the plank for unloading ties was for the convenience of the crew itself, that they might or might not use a plank, as they wished, and that the method of placing and using a plank was a matter within their good judgment and discretion. We think also that the contention, that the company was negligent in ordering the plaintiff and his crew to this particular place where the gangplanks had been already

arranged by the former crew, without having made an inspection of the "set up," is without merit. In the light of the testimony just discussed, whether they used their own planks or those already in position, the responsibility and duty were on them, for their own protection and safety, to see that the planks were securely and properly placed.

The respondent further urges that it was the company's duty in the premises to provide a more substantial footing for the unloading of the ties, and that the two planks should have been tied together, nailed, cleated, or otherwise fastened. With regard to this contention, the testimony shows that it is uncertain whether, if any of these things had been done, the place would have been made safer for those walking on the planks. But, aside from that, it appears from the testimony of plaintiff's witnesses that the crews themselves did whatever was necessary, in the way of nailing the planks, etc., when they thought that the situation was dangerous or that the boards were liable to slip, and that this was a duty of the members of the crew, who had the full choice whether they would do it or not.

We are unable to determine, when the testimony is considered, just in what particular the defendant was guilty of any negligence. From a careful study of the evidence, which we have read and reread, the conclusion is inescapable that plaintiff's injuries were due to his own failure to exercise proper precautions and care for his safety, which, in the circumstances, was a duty and responsibility resting upon him. While we sympathize with him in his misfortune, the defendant should not be penalized for something for which it was not responsible.

The judgment of the Circuit Court is reversed, and the case remanded to that Court, with instructions that judgment be entered up for the defendant under Rule 27 of this Court.

Mr. Chief Justice Blease, Mr. Justice Bonham and Mr. Acting Associate Justice W. C. Cothran concur.

Mr. Justice Carter (dissenting).

I am unable to agree with the conclusions reached in the leading opinion in this case, as to the Circuit Judge having committed error in submitting the issues to the jury. In my opinion the testimony adduced at the trial on the material issues, when considered as a whole, is susceptible of more than one reasonable inference, and for that reason I think his Honor committed no error in submitting the case to the jury. I therefore dissent. I express no opinion as to the other questions raised by the appeal.